**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AT AUSTIN**

| | |
|---|---|
| **MATTHEW BRAHM,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**THE ACRE HUB, LLC,**<br><br>*Defendant.* | Case No. 1:26-CV-3153<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Matthew Brahm ("Plaintiff" or "Mr. Brahm") brings this Class Action Complaint and Demand for Jury Trial against The Acre Hub, LLC ("Defendant" or "Acre Hub") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA, alleging that Defendant violated the TCPA by sending telemarketing text messages to Plaintiff and other putative class members whose numbers are listed on the National Do Not Call Registry, without their written consent.

4. Plaintiff also brings a claim under the Texas Business and Commerce Code, because Defendant, a Texas-based seller, made telephone solicitations from a location in Texas without holding the registration certificate that Texas law requires.

**PARTIES**

5. Plaintiff Matthew Brahm is an individual residing in Utah.

6. Defendant The Acre Hub, LLC is a Texas limited liability company with its registered office at 5900 Balcones Drive, Suite 100, Austin, Texas 78731, in Travis County.

Defendant is located in Texas, and, on information and belief, it acquires and markets land and sends the telemarketing text messages at issue from a location in Texas.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.* The Court has supplemental jurisdiction over Plaintiff's Texas state-law claim pursuant to 28 U.S.C. § 1367(a) because that claim arises from the same text messages and forms part of the same case or controversy.

8. This Court has personal jurisdiction over Defendant because Defendant is located in Texas and sent the telemarketing text messages at issue from Texas.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims, including Defendant's initiation of the text messages at issue, occurred in this District. The Austin Division is the proper division because Defendant's registered office is located in Travis County.

## BACKGROUND

### A. The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B. Offers Tied to a Property Transaction Can Be Telephone Solicitations.**

14. The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4); *see also* 47 C.F.R. § 64.1200(f)(15).

15. That definition looks to the purpose for which the sender initiated the call or message, and neither the statute nor the regulations require a message to mention a good, product, or service expressly. *Coffey v. Fast Easy Offer, LLC*, 178 F.4th 480, 483 (9th Cir. 2026) (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

16. Applying that definition, the Ninth Circuit held that a plaintiff stated a TCPA do-not-call claim where she alleged that calls and text messages asking whether she would sell her property were initiated, at least in part, to generate leads for services the sender provided to those who responded. *Id.* at 483–84. It was enough that one purpose of initiating the messages was to encourage the purchase of those services. *Id.* at 484.

17. As the Ninth Circuit explained, "[t]he 'purpose' at issue is not, on a plain read, the purpose of the call or message, but instead of the 'initiation' of that call or message," and a court "must consider not only the content of the messages [the plaintiff] received, but also their context

as it illuminates Defendants' purpose in initiating the messages." *Id.* at 483. Crediting allegations that the sender, although it occasionally bought homes directly, directed most responding recipients to brokerage services, the court held that "one purpose for which Defendants initiated these messages was to encourage the purchase of real estate brokerage services. That is enough to satisfy the statutory definition." *Id.* at 484.

18. A message therefore does not fall outside the TCPA merely because it is framed as an inquiry about buying a recipient's property. It is a telephone solicitation where, as here, the sender initiated it for the purpose of encouraging the recipient to enter a transaction involving the purchase of, or investment in, property, goods, or services.

**C. The Texas Business and Commerce Code**

19. Realizing the particular harm that unsolicited telemarketing poses, the Texas Legislature enacted Chapter 302 of the Texas Business and Commerce Code, which requires "sellers" making "telephone solicitations" to register with the Texas Secretary of State. Tex. Bus. & Com. Code §§ 302.001; 302.101.

20. Specifically, a seller may not make a telephone solicitation "from a location in this state or to a purchaser located in this state" unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. *Id.* § 302.101. Either circumstance triggers the requirement. A seller located in Texas must therefore register for solicitations it makes from Texas, whether or not the person solicited is located in Texas.

21. A "seller" is a person who makes a telephone solicitation on its own behalf. *Id.* § 302.001(5). A "telephone solicitation" includes a transmission of a text message, and a "telephone call" under the Code includes both voice calls and text message calls. *Id.* §§ 302.001(7), 304.002(10).

22. The burden of proof lies on Defendant to show that it registered each business location or to prove an exemption. *Id.* § 302.051.

23. Defendant is not registered with the Texas Secretary of State as required by the Business and Commerce Code. A search of the Secretary of State's Telephone Solicitors Search database, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp, for Defendant's legal name ("Acre Hub") or the trade name it used when texting Plaintiff ("Acre Deal") as either a seller name or a DBA returns no results.

## FACTUAL ALLEGATIONS

24. Plaintiff Matthew Brahm is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

25. Plaintiff's telephone number, (585) XXX-XXXX, is a residential, non-commercial telephone number.

26. Plaintiff uses the telephone number for personal, residential, and household reasons, and does not use it for any business purpose.

27. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

28. Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

29. Plaintiff's telephone number has been listed on the National Do Not Call Registry continuously since October 1, 2021, more than four years before the first text message at issue.

30. Despite that fact, Plaintiff received at least three telemarketing text message calls from Defendant between September 12, 2025, and September 14, 2026 (the "Texts"), each sent from a different telephone number and each addressed to Plaintiff's number.

31. On or about September 12, 2025, at approximately 8:45 AM, Plaintiff received the first Text from telephone number (207) 250-4394, which read: "Hey James, this is Kelly at The Acre deal. I was doing some searching and ran into your land in Naples-came up on my list. Can we talk today?"

32. On or about July 7, 2026, at approximately 11:45 AM, Plaintiff received the second Text from telephone number (839) 278-9835, which read: "Hi James, Tina here with The Acre Deal. Would you consider selling your land in Ontario County?"

33. On or about September 14, 2026, at approximately 11:30 AM, Plaintiff received the third Text from telephone number (256) 977-0374, which read: "Hi James, Mariam here with The Acre Deal. Would you consider selling your land in Ontario County?"

34. The SMS disclosure published on Defendant's affiliated website, theacredeal.com, states that marketing text messages are sent by The Acre Hub, LLC.

35. Plaintiff did not respond to the first or second Text. Plaintiff had never communicated with Defendant before receiving the Texts, and Defendant's Texts were the first contact between them.

36. On September 14, 2026, after receiving the third Text, Plaintiff replied at approximately 12:47 PM with two messages: "I might." and "What are you offering?"

37. At approximately 3:03 PM, the sender responded by text: "Ok, the best way to move forward is to get on a call with my senior executive (decision maker) and get you a written offer, can I call you now or in 2 mins?" Plaintiff answered: "Yes."

38. The sender then called Plaintiff and transferred the call to her manager, who identified himself as "Saul" and identified the company as "The Acre Hub."

39. Saul stated that the company had reached out to Plaintiff first, without Plaintiff ever having contacted it. Saul made a specific offer to purchase the property and described the terms on which the company would purchase it.

40. The Texts were initiated for the purpose of encouraging the purchase of, or investment in, property, goods, or services, and were therefore "telephone solicitations" under 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(15).

41. On information and belief, Defendant acquires land from owners and markets and resells that land to other buyers for profit, and Defendant initiated the Texts to generate leads for that business, including to encourage recipients who responded to engage Defendant, or affiliates it directs, in transactions and services connected to the sale and purchase of real property.

42. Defendant initiated and sent the Texts itself, and is directly liable for them.

43. In the alternative, to the extent any other person, including The Acre Max, LLC or any lead generator, sent any of the Texts, that person did so under Defendant's brand, with Defendant's authority, and for Defendant's benefit, and Defendant is vicariously liable for them.

44. On information and belief, the Texts were initiated and sent from Defendant's business location in Texas.

45. Defendant did not hold a registration certificate from the Texas Secretary of State for the business location from which it sent the Texts, or for any other location.

46. At no point did Plaintiff expressly consent to receiving telemarketing calls or telemarketing text message calls from Defendant prior to receiving the Texts, and Plaintiff never provided Defendant with any signed written agreement permitting such calls.

47. Plaintiff has never been a customer of Defendant and had no established business relationship with Defendant when the Texts were sent.

48. The Texts were unwanted.

49. The Texts were nonconsensual encounters.

50. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing text message calls.

51. As a result of Defendant's conduct, Plaintiff has been harmed because Plaintiff's privacy was violated and Plaintiff was annoyed and harassed. In addition, the telemarketing text message calls occupied Plaintiff's telephone, storage space, and bandwidth, rendering the telephone unavailable for legitimate personal communications, including while driving, working, and performing other critical tasks.

52. Defendant's violations were willful or knowing. Defendant sent the Texts from three different telephone numbers over the course of a year, using first names and a trade name held by a dissolved entity, without disclosing its legal name, and, on information and belief, did not scrub its text-message lists against the National Do Not Call Registry before sending them.

## CLASS ACTION ALLEGATIONS

53. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

54. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telephone solicitation, by call or text message, from or on behalf of Defendant encouraging the purchase of, or investment in, property, goods, or

> services, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Texas Business and Commerce Code Class:** All persons in the United States who (1) received a telephone solicitation call or text message from Defendant, (2) that was made from a location in Texas or to a person located in Texas, (3) at a time when Defendant did not hold a Texas registration certificate for the business location from which the solicitation was made, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

55. **Numerosity:** The exact number of Class members is unknown but based on the en masse nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of its agents.

56. **Typicality:** Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

57. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

58. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a. Whether Defendant's calls and text messages were telephone solicitations, including whether they were initiated for the purpose of encouraging the purchase of, or investment in, property, goods, or services;

b. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

c. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

d. Whether Defendant made telephone solicitations from a location in Texas or to purchasers located in Texas without holding a registration certificate for the business location from which they were made, and whether any exemption applies; and

e. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

59. **Superiority:** Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

60. In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under Fed. R. Civ. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

61. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

62. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

63. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be

initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

64. Defendant did not have prior express invitation or permission, evidenced by a signed, written agreement, to send the Texts, and had no established business relationship with Plaintiff or, on information and belief, with members of the National DNC Class.

65. These violations were willful or knowing.

66. As a result of Defendant's and/or its affiliates', agents', and/or other persons' or entities' violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

67. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT II**
**Violations of Texas Business and Commerce Code § 302.101**
**(On Behalf of Plaintiff and the Texas Business and Commerce Code Class)**

68. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

69. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitation calls and text messages from a location in Texas to Plaintiff and members of the Texas Business and Commerce Code Class despite not holding a registration certificate for the business location from which the telephone solicitations were made.

70. Defendant is a "seller" that made the telephone solicitations on its own behalf. Because the solicitations were made from a location in Texas, Defendant was required to register under § 302.101 regardless of where Plaintiff and the Class members were located.

71. Defendant's violations were negligent, willful, or knowing.

72. As a result of Defendant's violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are entitled to civil penalties of up to $5,000 for each violation under § 302.302, plus all reasonable costs of prosecuting the action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the Classes as alleged herein;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned as counsel for the Classes;

D. Damages to Plaintiff and members of the National DNC Class pursuant to 47 U.S.C. § 227(c)(5);

E. Injunctive relief for Plaintiff and members of the National DNC Class, pursuant to 47 U.S.C. § 227(c)(5), preventing Defendant from making calls or sending text messages to numbers listed on the National Do Not Call Registry;

F. Civil penalties to Plaintiff and members of the Texas Business and Commerce Code Class pursuant to Tex. Bus. & Com. Code § 302.302, and all reasonable costs of prosecuting the action;

G. Attorneys' fees and costs, as permitted by law; and

H. Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 11th day of November, 2026.

/s/Omar F. Darwich
The Darwich Law Firm, Co., LPA
Omar F. Darwich
Tx Bar No. 24124686
6951 Virginia Parkway
Suite 104
McKinney, TX 75071
(469) 960-6069
omar@darwichlegal.com
ATTORNEY FOR PLAINTIFF